UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **JONATHON LAYDEN**<br>**individually and on behalf of**<br>**all others similarly situated,**<br><br>*Plaintiff*,<br><br>vs.<br><br>**ADAMS AUTO CORP.,**<br><u>Serve at Registered Agent:</u><br>    **Robert O. Jester**<br>    **Ensz & Jester P.C.**<br>    **1100 Main Street, Suite 2121**<br>    **Kansas City, MO 64105**<br><br>*Defendant*. | Case No.:<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Jonathon Layden, individually and on behalf of all others similarly situated, brings this action against Defendant Adams Auto Corp. ("Adams Toyota") to secure redress for Adams Toyota's practice of sending text messages to cellular telephone numbers in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*. Plaintiff, for his class action complaint, alleges as follows based upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by counsel:

**PARTIES, JURISDICTION, AND VENUE**

1. At all times relevant hereto, Plaintiff Layden has been a resident of Jackson County, Missouri.

2. Defendant Adams Toyota is a Missouri corporation with a principal place of

business in Jackson County, Missouri.

3. Defendant Adams Toyota can be served through its registered agent Robert O. Jester, Ensz & Jester P.C., 1100 Main Street, Suite 2121, Kansas City, Missouri 64105.

4. This Court has federal question subject matter jurisdiction over this TCPA action pursuant to 28 U.S.C. § 1331. *See Mims v. Arrow Financial Services, Inc.*, 132 S. Ct. 740 (2012).

5. The Court has personal jurisdiction over Adams Toyota and venue is appropriate in this district pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) because Adams Toyota resides in this district and because it sent unlawful text messages to a resident of this district.

6. On information and belief, Adams Toyota has sent the same or similar text messages complained of by Plaintiff to others within this judicial district, such that a substantial portion of the events giving rise to this cause of action occurred here.

7. In addition, Adams Toyota also transacts significant amounts of business within this district, directs telephone calls and text messages here, solicits customers here, and enters into consumer and business contracts here, thereby subjecting it to the jurisdiction of this Court.

## NATURE OF THE ACTION

8. Adams Toyota is an auto dealership that sells and services new and used Toyota brand vehicles.

9. Within the last four years, in order advertise and market its products and services, to build brand trust through interaction with the public, improve its rankings in local online searches, increase its exposure on business review websites, and pursue other marketing objectives, Adams Toyota (either directly or through a third-party telemarketer) sent unsolicited text messages to the cellular telephones of Plaintiff and the putative class members in violation of the TCPA.

2

Case 4:18-cv-00065-ODS   Document 1   Filed 01/23/18   Page 2 of 15

10. Specifically, Adams Toyota (either directly or through a third-party telemarketer) sent unsolicited text messages to the cellular telephones of Plaintiff and the putative class members containing its brand name "Adams Toyota", its logo, and/or a hyperlink to a website soliciting online reviews of Adams Toyota.

11. By sending the text messages at issue in this Complaint, Adams Toyota has caused Plaintiff and the putative class members (as defined herein) actual harm.

12. On information and belief, Adams Toyota routinely sends these text messages despite the fact that Plaintiff and the putative class members:

> (a) never provided prior express consent in writing, or otherwise, for Adams Toyota to send advertising or telemarketing text messages to their cellular telephone numbers; and/or
>
> (b) never provided prior express consent in writing, or otherwise, for Adams Toyota to send text messages to their cellular telephone numbers using an automatic telephone dialing system (as defined by the TCPA).

13. Plaintiff, on his own behalf and on behalf of all others similarly situated, brings the instant lawsuit seeking an injunction requiring Adams Toyota to cease all unsolicited text message activities and an award of statutory damages to Plaintiff and members of the putative class under the TCPA.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
### 47 U.S.C. §§ 227, *et seq*.

14. Advancements in telephone dialing technology since the 1980s and 90s have made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money.

3

15. Senator Hollings, sponsor of the TCPA, described such marketing practices as "the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1990).

16. The FCC recently noted, "every month, U.S. consumers are bombarded by an estimated 2.4 billion robocalls." *In the Matter of Advanced Methods to Target and Eliminate Unlawful Robocalls*, Notice of Proposed Rulemaking, Statement of Chairman Pai, 32 FCC Rcd. 2306, 2331 (2017) (emphasis added). That number has since increased to an estimated 2.5 billion robocalls per month as of October 2017.[1]

17. In response to these unwanted telephone calls, text messages, and junk faxes, the federal government and numerous states have enacted legislation to combat these widespread telemarketing abuses. As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers. … *Banning such automated or prerecorded telephone calls* to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, *is the only effective means of protecting telephone consumers from this nuisance and privacy invasion*.

Pub. L. No. 102-243 §§ 2(6) & (12) (1991), *codified at* 47 U.S.C. § 227 (emphasis added).[2]

18. As is relevant here, the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any

---

[1] *See In the Matter of Advanced Methods to Target and Eliminate Unlawful Robocalls*, Report and Order and Further Notice of Proposed Rulemaking, Statements of Commissioners Clyburn and Rosenworcel, 32 FCC Rcd. 9706, 9756 & 9759 (2017).

[2] *See also Zean v. Fairview Health Servs.*, 858 F.3d 520, 522-23 (8th Cir. 2017) ("Recognizing that automated calls are often a nuisance and an invasion of privacy, Congress passed the TCPA to balance individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade.") (internal citations and quotation marks omitted).

4

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service, …" 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1).

19. For purposes of the TCPA, "[a] text message to a cellular telephone … qualif[ies] as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016) (citation omitted).[3]

20. "Automatic telephone dialing system" ("ATDS") refers to any equipment that has the "capacity to dial numbers without human intervention[.]" *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 726 (N.D. Ill. 2011) (*citing In re Rules & Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14092, ¶ 132 (2003) ("2003 TCPA Order")).

21. In 2012, the FCC – the agency tasked with promulgating the implementing regulations of the TCPA – revised its TCPA rules to require *prior express written consent* before initiating a telephone call "that includes or introduces an advertisement or constitutes telemarketing[.]" 47 C.F.R. § 64.1200(a)(2); *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6589, ¶ 37 & fn. 113 (2013).

22. According to FCC regulations, "*prior express consent*" must (i) be in writing; (ii) be signed by the person providing the consent; (iii) clearly authorize the calling party to use an ATDS or artificial or pre-recorded voice; (iv) specify the telephone number to which the person is consenting to be called; and (v) not be a condition of purchasing any goods or services. *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, FCC Report and Order, 27 FCC Rcd. 1830, 1843, ¶ 32 (2012) ("2012 TCPA Order").

---

[3] *See also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Order, 30 FCC Rcd. 12484, 12485, ¶ 3 (2016) (the TCPA's prohibition on robocalls "encompasses both voice and text calls, including short message service (SMS) calls and text calls and text calls made using Internet-to-phone technology, …").

5

23. The FCC's regulations define "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). Whether a call is an "advertisement" depends on the content of the material. *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

24. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). The "telemarketing" inquiry focuses on the purpose of the telephone call or message, rather than its content. *Golan*, 788 F.3d at 820.

25. Calls from auto dealers asking persons or entities to complete surveys or reviews constitute advertising and/or telemarketing prohibited by the TCPA in the absence of prior express written consent. *See e.g., Katz v. Am. Honda Motor Co.*, No. 15-cv-4410, 2017 U.S. Dist. LEXIS 114160, at *5 (C.D. Cal. May 12, 2017) (holding that even if a customer provides a cell number to auto dealer in connection with service to vehicle, this does not constitute express consent to advertising or telemarketing survey calls).

26. The FCC has also made rulings regarding the TCPA's vicarious liability standards as they relate to telemarketing. As early as 1995, the FCC stated that "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *In re Rules and Regulations Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 (1995).

27. The FCC has also clarified that vicarious liability is imposed under federal common law principles of agency for violations of either sections 227(b) or (c) that are committed by third-party telemarketers. *Dish Network Ruling* at 6580 & ¶ 18.

28. The TCPA provides for injunctive relief and the greater of actual damages or $500

per violation, which may be trebled where defendant's conduct was done willfully or knowingly. 47 U.S.C. §§ 227(b)(3) and (c)(5).

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

29. Within the four years preceding the filing of this action, Adams Toyota and/or its agents utilized an ATDS to send text messages to the wireless telephone numbers of Plaintiff and the putative class members.

30. Specifically, the hardware and software used by Adams Toyota and/or its agents has the capacity to generate and store random numbers, or store lists of telephone numbers, and to dial those numbers, *en masse*, in an automated fashion without human intervention.

31. Plaintiff and the putative class never provided prior express consent, in writing or otherwise, for Adams Toyota to send autodialed, advertising, and/or telemarketing text messages to their cellular telephone numbers.

32. Adams Toyota (i) requires consumers or businesses to provide their telephone numbers as a condition of providing goods and services, (ii) does not advise consumers or businesses it intends to send autodialed, advertising, and/or telemarketing text messages to their cellular telephone number, (iii) does not obtain prior express consent, written or otherwise, to send autodialed, advertising, and/or telemarketing text messages to the consumer's or business's cellular telephone number.

33. When Adams Toyota obtains the cellular telephone number of a consumer or business, it adds it to a stored list of numbers to which Adams Toyota and/or its agents repeatedly send autodialed, advertising, and/or telemarketing text messages.

34. Adams Toyota's text messages are sent with equipment having the capacity to dial numbers without human intervention, the equipment is unattended by human beings, and the

7

equipment does, in fact, send text messages automatically, *i.e.*, without human intervention.

35. The equipment employed by Adams Toyota and/or its agents not only has the capacity to store or produce telephone numbers to be called using a random or sequential number generator (and to dial such numbers), but was programmed to sequentially or randomly access stored telephone numbers to automatically send text messages to those numbers.

36. The text messages sent by Adams Toyota to Plaintiff and the putative class were made for a commercial purpose in that they contain its brand name "Adams Toyota", its logo, and/or a hyperlink to a website soliciting online reviews of Adams Toyota.

37. Adams Toyota's text messages are advertisements and/or constitute telemarketing as defined by the TCPA.

38. Not only does Adams Toyota fail to obtain prior express consent before sending such text messages, Adams Toyota's text messages do not provide a way of opting out of future text messages.

39. Adams Toyota is aware that the above-described text messages are being sent to consumers and businesses without their prior express consent, but Adams Toyota willfully continues to send them anyways.

40. Plaintiff and the putative class members have been substantially damaged by Adams Toyota's repeated text messages[4] – their privacy was invaded; they were annoyed and inconvenienced; the repeated text messages intruded upon their seclusion and interfered with the

---

[4] *See Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (allegations of "[u]nsolicited phone calls or text messages … invade the privacy and disturb the solitude of their recipients" and are sufficient to confer Article III standing); *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3rd Cir. 2017) (same); *Williams v. zZounds Music, L.L.C.*, No. 16-cv-940 (W.D. Mo. Feb. 28, 2017) (same) (*citing Van Patten*); *Hunsinger v. Gordmans, Inc.*, No. 16-cv-162, 2016 WL 7048895 (E.D. Mo. Dec. 5, 2016) (same).

exclusive use of their property; they were charged out of pocket cellular airtime minutes for the text messages and cellular data for services related to the text message content and hyperlinks;[5] the ATDS calls intruded upon and occupied the capacity of the cellular phones of Plaintiff and the Class members, depleted and/or reduced the lifespan of their cellular phone batteries,[6] caused Plaintiff and the class members to incur the costs of electricity to recharge their phones;[7] and, on information and belief, Adams Toyota's repeated text messages have caused unwanted use, damage and/or depletion of their property, including, but not limited to, a reduction in the lifespan of their LCD screens, speakers, vibration motors, and other hardware and/or electronic components.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF LAYDEN

41. At all times relevant hereto, Plaintiff Layden has paid a third-party provider for cellular telephone service and cellular data service on his personal cellular telephone, ending in "1734".

42. Plaintiff Layden took his vehicle to Adams Toyota to be serviced.

43. As a condition to providing Plaintiff with its repair services, and at the request of

---

[5] *See In re Rules Implementing the Tel. Consumer Prot. Act of* 1991, 23 FCC Rcd. 559, 562, ¶ 7 (2008) ("wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) (recipients are damaged because they are charged "out of pocket" cellular airtime minutes); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 729 (S.D. Tx. 2012) (Plaintiff's statement that he pays a third-party provider for cellular phone services is sufficient to show that an individual was charged for the calls); *Warnick v. Dish Network LLC*, No. 12-cv-01952 (D. Co. Sep. 30, 2014) ("users of cellular telephone numbers *are indeed charged* for incoming calls, regardless of whether they incur any *additional* charges for such calls.").

[6] *See e.g.,* Apple Inc., *Battery Servicing and Recycling*, http://www.apple.com/batteries/service-and-recycling ("All rechargeable batteries have a limited lifespan … Your own battery's lifespan will vary depending on how you use your device …").

[7] *See Mey v. Got Warranty, supra fn. 2*, 193 F. Supp. 3d at 645-47 (Intangible harms include "intrusion upon and occupation of the plaintiff's cell phone. … [and] intrusion upon another person's computerized electronic equipment …" Tangible harms, including the cost of electricity, "[w]hile certainly small, [are] real, and the cumulative effect could be consequential.").

9

Adams Toyota, Plaintiff provided his cell number so that Adams Toyota could call him regarding the estimated expenses, the nature of the repairs needed, and the status of the repairs.

44. On April 27, 2017, and then again on July 31, 2017, Adams Toyota and/or its agents caused text messages to be sent, automatically and without human intervention, to Plaintiff's cell phone. The text messages contained its brand name "Adams Toyota", its logo, and hyperlinks which, if followed, directed to a website soliciting online reviews of Adams Toyota.

45. The text messages sent by Adams Toyota to Plaintiff were made for a commercial purpose and are advertisements and/or constitute telemarketing as defined by the TCPA.

46. Adams Toyota did not provided Plaintiff with notice that it intended to send multiple autodialed, advertising, and/or telemarketing text messages to his cell phone; and Plaintiff never provided express consent in writing, or otherwise, for Adams Toyota to send such text messages to his cell phone.

## CLASS ACTION ALLEGATIONS

47. Plaintiff restates and incorporates by reference all paragraphs of this Complaint, including all subparagraphs thereof.

48. As to Count I for violation of the TPCA (the "TCPA Class"), Plaintiff brings this action on behalf of himself and on behalf of a putative class defined as:

> All persons and entities within the United States to whom Adams Toyota (or a third party on Adams Toyota's behalf) sent a text message to their cellular or wireless telephone, containing an image with Adam Toyota's brand name or logo, and/or a hyperlink containing "rvw" or directing to a website soliciting reviews for Adams Toyota, within the four years predating the filing of this Complaint.

49. Excluded from the above-defined class are Adams Toyota, any entity in which Adams Toyota has a controlling interest, Adams Toyota's officers, directors, and employees,

Adams Toyota's counsel, any persons or entities who have previously settled a TCPA claim with Adams Toyota, the Court and Court personnel, and Plaintiff's counsel.

50. **<u>Numerosity – Fed. R. Civ. P. 23(a)(1)</u>.** Plaintiff does not know how many members are in the putative class, but believes them to be in the thousands, or tens of thousands. On information and belief, the number of class members is so numerous that their individual joinder is impracticable. The precise number of putative class members and their phone numbers can be obtained from information and records in the possession and control of Adams Toyota or third parties acting on Adams Toyota's behalf.

51. **<u>Existence and Predominance of Common Questions of Law and Fact – Fed. R. Civ. P. 23(a)(2); 23(b)(3)</u>.** Common questions of law or fact exist as to all members within the putative class and predominate over any questions solely affecting any individual member. The predominating common legal and factual questions, each of which may also be certified under Fed. R. Civ. P. 23(c)(4), include the following:

   (a) Whether Adams Toyota and/or its agents used an automatic telephone dialing system to send text messages;

   (b) Whether the equipment used by Adams Toyota, or a third party on Adams Toyota's behalf, has the capacity to send text messages automatically, *i.e.*, without human intervention;

   (c) Whether Adams Toyota's text messages are advertisements;

   (d) Whether Adams Toyota's text messages constitute telemarketing;

   (e) Whether Adams Toyota requires its customers provide their telephone numbers as a condition of providing goods and services;

   (f) Whether Adams Toyota advised Plaintiff and the class members that it

intended to send autodialed, advertising, and/or telemarketing text messages to their cellular telephone numbers;

(g) Whether Adams Toyota obtained the prior express consent, written or otherwise, to send autodialed, advertising, and/or telemarketing text messages to the cellular telephone numbers of Plaintiff and the class members;

(h) Whether Adams Toyota's text messages were sent for an emergency purpose;

(i) Whether Adams Toyota's text messages were sent willfully or knowingly; and/or

(j) Whether, and to what extent, class members are entitled to equitable relief, including declaratory relief, a preliminary injunction, and/or permanent injunction.

52. **<u>Typicality – Fed. R. Civ. P. 23(a)(3)</u>.** Plaintiff's claims are typical of the claims of the putative class members he seeks to represent. The factual and legal bases of Adams Toyota's liability to Plaintiff are the same for all putative class members, *i.e.*, Adams Toyota violated the TCPA by using an automatic telephone dialing system to send advertising and/or telemarketing text messages without obtaining prior express written consent in writing or otherwise.

53. **<u>Adequacy of Representation – Fed. R. Civ. P. 23(a)(4)</u>.** Plaintiff will fairly and adequately protect the interests of the putative class members. Plaintiff has no interests that might conflict with the interests of the putative class members. Plaintiff will pursue the claims vigorously, and Plaintiff has retained counsel competent and experienced in TCPA class actions and complex litigation.

54. **Superiority – Fed. R. Civ. P. 23(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members is small compared with the burden and expense that would be entailed by individual litigation of their claims against Adams Toyota. It would thus be virtually impossible for class members, on an individual basis, to obtain effective redress for the wrongs done them. Furthermore, even if class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

## COUNT I
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)

55. Plaintiff restates and incorporates by reference all paragraphs of this Complaint, including all subparagraphs thereof.

56. Adams Toyota and/or its agents employed an ATDS to send non-emergency text messages, automatically and without human intervention, to the cellular or wireless telephones of Plaintiff and the members of TCPA Class.

57. Adams Toyota requested, and obtained, the cellular telephone numbers of Plaintiff and the TCPA Class members as a condition to providing its goods and services.

58. Adams Toyota never obtained prior express consent in writing, or otherwise, advising Plaintiff or the members of the TCPA Class that it intended to send autodialed,

13

advertising, and/or telemarketing text messages to their cellular or wireless telephones.

59. As a result of Adams Toyota's conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the TCPA Class were harmed and are entitled to a minimum of $500.00 in damages for each unlawful text message.

60. Plaintiff and the TCPA Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(b)(3).

61. Adams Toyota's text messages were willful and knowing, in that Adams Toyota knew it was obtaining and storing cellular telephone numbers and employing equipment that would send autodialed, advertising, and/or telemarketing text messages to such numbers; Adams Toyota intended that such equipment would in fact send automated text messages containing its brand name "Adams Toyota", its logo, and/or a hyperlink to a website soliciting online reviews; and Adams Toyota knew that it had not obtained prior express consent in writing, or otherwise, from Plaintiff or any of the putative class member to send such text messages.

62. "Willful … means that the violator knew that he was doing the act in question. … A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 & fn. 86 (May 14, 2007) (citations omitted).

63. Accordingly, the Court should treble the amount of statutory damages available to Plaintiff and the TCPA Class and award $1,500 for each text message sent in violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the TCPA Class, seeks $1,500 per violation of the TCPA; a declaration that Adams Toyota's telemarketing methods, acts and practices herein violate the TCPA, 47 U.S.C. §§ 227, *et seq*.; an injunction prohibiting Adams

Toyota from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and costs.

### JURY DEMAND

Plaintiff demands a trial by jury of all claims that are so triable.

Dated: January 23, 2018

Respectfully submitted,

 /s/ Bill Kenney
William C. Kenney    Mo. Bar No. 63001
**BILL KENNEY LAW FIRM, LLC**
1100 Main Street, Suite 1800
Kansas City, MO 64105
Telephone: (816) 842-2455
Facsimile: (816) 474-8899
Email: *bkenney@billkenneylaw.com*

*and*

Ari N. Rodopoulos    Mo. Bar No. 58777
**WOOD LAW FIRM, LLC**
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171
T: (816) 256-3582
F: (816) 337-4243
Email: *ari@woodlaw.com*

*Attorneys for Plaintiff and all others similarly situated*